IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| EMMA JEAN HAZLEY, etc., et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CIVIL ACTION 08-0142-WS-B |
| ) | |
| MONROE COUNTY BOARD OF ) | |
| EDUCATION, et al., ) | |
| ) | |
| Defendants. ) | |

## ORDER

This matter is before the Court on the motion of defendant Monroe County Board of Education ("the Board") for summary judgment. (Doc. 33). The Board filed a brief and evidentiary materials in support of its motion, (Doc. 33), and the plaintiffs declined the opportunity to respond. (Doc. 34). After carefully considering the foregoing and other relevant material in the file, the Court concludes that the motion for summary judgment is due to be granted.

## BACKGROUND

The lawsuit is brought by "Emma Jean Hazley and on behalf of Minor Child JJ." (Doc. 1 at 1).[1] The complaint names as defendants the Board and Monroeville Junior High School ("MJHS") boys' basketball coach Ronald King.

According to the complaint, JJ was a student at MJHS during the 2005-2006 academic year. Sometime during the school year, King engaged in unwelcome sexual conduct, including calling JJ on her cell phone, kissing her, and touching her in private places. The MJHS principal had actual knowledge of this harassment in February 2006.

---

[1]Despite this ambiguous phraseology, the parties agree that both Hazley and JJ are plaintiffs.

On March 17, 2006, Hazley learned from a case worker for Department of Human Resources ("DHR") of a sexually tinged letter King had given JJ.  Hazley met with the Board's superintendent, Dennis Mixon, on March 20, 2006.  Mixon had a copy of King's letter and confirmed that it was King's handwriting.  There is no indication in the complaint that any harassment occurred after this date.

The sole surviving claims against the Board are brought under Title IX (Count Three) and Section 1983 (Count Two).[2]  According to the complaint, the Board's wrongdoing relative to the federal claims consisted of the following: (1) failing to have in place a formal anti-harassment policy; (2) failing to have in place an official grievance procedure for lodging sexual harassment complaints; (3) failing to have appropriate policies in place to prevent further abuse once abuse has been reported to a school official; (4)  receiving constructive or imputed knowledge of the harassment (based on the principal's actual knowledge) in February 2006, without taking corrective action; (5) failing to provide counseling to JJ; and (6) placing JJ back in the harassing environment.

## DETERMINATIONS OF UNCONTROVERTED FACT[3]

At all relevant times, Lana Wilson was the principal of MJHS, Dennis Mixon was superintendent of the Board, and the members of the Board were William Andrews, Patricia Black, George Coker, Martha Jordan, and Tony Powell.

The Board adopted a formal anti-harassment policy and a procedure for reporting sexual harassment prior to the beginning of the 2005-2006 school year.  Both were included in the student handbook, which was distributed to students, including JJ, at the beginning of the school year.  King, who was beginning his first year with the school

---

[2]The plaintiffs' state-law claims against the Board were previously dismissed based on sovereign immunity.  (Doc. 20 at 6).

[3]Because the plaintiffs did not respond to the motion for summary judgment, all uncontroverted facts are drawn from the seven affidavits submitted by the Board.

system, also received a copy of the anti-harassment policy at the beginning of the school year.

At no time prior to Friday, March 17, 2006 did Wilson, Mixon or any Board member receive any report of sexual misconduct by King, with respect to JJ or any other student. On March 17, a student reported to a teacher that King and JJ were having a relationship. The teacher reported this information to Wilson and to DHR. A DHR case worker came to school and interviewed JJ. After the case worker left, the school counselor brought to Wilson a letter from King to JJ, which JJ had given her. Wilson and the case worker then met with Hazley. Wilson called Mixon to report the situation, but Mixon was unavailable.

King taught several seventh-grade classes. JJ, an eighth-grader, had no classes with him. King had no contact with JJ on March 17.

Wilson reached Mixon on the morning of Saturday, March 18 and advised him of the situation. That evening, she called King and told him to report directly to Mixon's office on Monday morning. At approximately 8:00 a.m. on Monday, March 20, Mixon and Wilson met with King in Mixon's office. At the meeting, Mixon placed King on administrative leave pending investigation. King did not return to his teaching duties at MJHS at any time during the school year, and his contract was not renewed thereafter. King had no contact with JJ or other MJHS students following his meeting with Mixon.

On or about March 20, 2006, Mixon informed the Board members of the situation involving King and JJ.

## CONCLUSIONS OF LAW

The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

Summary judgment should be granted only if "there is no issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P.

56(c).  The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial."  *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991).  Once the moving party has satisfied its responsibility, the burden shifts to the nonmoving party to show the existence of a genuine issue of material fact.  *Id.*  "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment."  *Id.*  (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted).

Although the plaintiffs have filed no response to the Board's motion, "the district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion."  *United States v. One Piece of Real Property*, 363 F.3d 1099, 1101 (11th Cir. 2004).  "The district court need not sua sponte review all of the evidentiary materials on file at the time the motion is granted, but must ensure that the motion itself is supported by evidentiary materials. [citation omitted] At the least, the district court must review all of the evidentiary materials submitted in support of the motion for summary judgment."  *Id.* at 1101-02.

**I.  Title IX.**

"[W]e hold that a damages remedy will not lie under Title IX unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to respond.  We think, moreover, that the response must amount to deliberate indifference to discrimination."  *Gebser v. Lago Vista School District*, 524 U.S. 274, 290 (1998).

It is uncontroverted that, before Friday, March 17, 2006, neither the Board, Mixon nor Wilson had either actual knowledge or even any inkling that King had engaged in

misconduct with JJ or any other student.  It is further uncontroverted that King had no contact with JJ or any other female student on or after March 17, that he was placed on administrative leave on the morning of Monday, March 20, and that he never returned to teaching duties at MJHS after March 17.

The law is unsettled whether actual knowledge of an Alabama principal can ever be a sufficient basis for Title IX liability.[4]  The Court declines the Board's invitation to reach this issue because, even if an Alabama principal's actual knowledge can be sufficient, Wilson had no such knowledge until March 17, and at that time she responded immediately by investigating the allegation and notifying the superintendent, and King had no contact with JJ following Wilson's receipt of actual knowledge.  Likewise, the Board and Wilson responded promptly upon their receipt of actual knowledge by placing King on administrative leave on March 20 and preventing him from returning to his duties at MJHS.

A response is legally inadequate under *Gebser* only if it "amount[s] to deliberate indifference."  The Eleventh Circuit has repeatedly held responses more tepid and less effective than that of the Board to negate deliberate indifference as a matter of law.  *See Sauls v. Pierce County School District*, 399 F.3d 1279, 1285-87 (11th Cir. 2005); *Davis v. DeKalb County School District*, 233 F.3d 1367, 1374-75 (11th Cir. 2000).  When, as here, there is an immediate response to actual knowledge of harassment that absolutely precludes further harassment, deliberate indifference cannot possibly be established.

To the extent the plaintiffs' claim is based on the failure to have in place a formal anti-harassment policy or an official grievance procedure for lodging sexual harassment

---

[4]*See Floyd v. Waiters*, 133 F.3d 786, 790-92 (11th Cir. 1998) ("*Floyd I*"), *vacated*, 525 U.S. 802 (1998), *reinstated*, 171 F.3d 1264  (11th Cir. 1999) ("*Floyd II*") (the principal with actual knowledge must have the authority to take action to end the harassment and must be sufficiently high in the hierarchy so that her acts constitute an official decision by the school district itself not to remedy the misconduct, with the latter requirement dependent on state law and where it places responsibility for compliance with Title IX).

complaints, it is uncontroverted that such policies and procedures were in place during the 2005-2006 school year and that both King and students, including JJ, received copies of them.  To the extent the plaintiffs' claim is based on the failure to have policies in place to prevent further abuse following a report of abuse to a school official, any such failure is irrelevant, since it is uncontroverted that the first report of abuse occurred on March 17 and that JJ was immediately protected from any further abuse.  To the extent the plaintiffs' claim is based on the failure of Wilson, Mixon or the Board to take corrective action in February 2006, the failure is irrelevant because it is uncontroverted that they had no actual knowledge of harassment at that time and thus had no legal duty (or reason) to take corrective action.  To the extent the plaintiffs' claim is based on placing JJ back in a harassing environment, it is uncontroverted that this never occurred; before March 17, no relevant person had actual knowledge of any harassment and so did not (and had no duty to) remove her from her environment and, on March 17, JJ was removed from the harassing environment by the permanent removal of King.  To the extent the plaintiffs' claim is based on failing to counsel JJ, the plaintiffs have offered, and the Court has discovered, no authority for the proposition that a defendant has any duty under Title IX to offer counseling to a student victim of teacher sexual harassment.

In summary, the Board is entitled to summary judgment on the plaintiffs' Title IX claim.

## II.  Section 1983.

Count One seeks "to redress unlawful discrimination on the basis of sex in violation of Title IX," through the vehicle of Section 1983.  (Doc. 1, ¶ 23).  The Court declines the Board's invitation to hold that violations of Title IX cannot be made the subject of a Section 1983 claim because, even if they can, under both statutes the plaintiffs "must present some evidence that ... a School Board official knew of the teacher's misconduct with [the plaintiff] or similar misconduct with other students and

was deliberately indifferent to their misconduct." *Bailey v. Orange County School Board*, 222 Fed. Appx. 932, 933 (11th Cir. 2007). For the reasons set forth in Part I, as a matter of law the Board did not act with deliberate indifference. *See Davis*, 233 F.3d at 1376 (where the defendants were not deliberately indifferent for purposes of Title IX, they were not deliberately indifferent for purposes of Section 1983).

Count One also alleges that the Board violated JJ's substantive due process right to freedom of bodily integrity. (Doc. 1, ¶ 33). The Court assumes without deciding that a student has a due process right to be free of sexual abuse by a public school teacher. *See Hartley v. Parnell*, 193 F.3d 1263, 1268 (11th Cir. 1999) (indulging such an assumption); *Plumeau v. School District No. 40*, 130 F.3d 432, 438 (9th Cir.1997) (concluding that such a right exists); *Doe v. Taylor Independent School District*, 15 F.3d 443, 452 (5th Cir. 1994) (same). The Court also assumes without deciding that King's conduct violated this right. The question becomes whether the Board can be liable for that violation.

"The law is clear that a municipality cannot be held liable for the actions of its employees under § 1983 based on a theory of respondeat superior. [citation omitted] Rather, only deprivations undertaken pursuant to governmental 'custom' or 'policy' may lead to the imposition of governmental liability." *Griffin v. City of Opa-Lacka*, 261 F.3d 1295, 1307 (11th Cir. 2001).[5] "Policy" means an "officially promulgated ... policy" of the entity. *Grech v. Clayton County*, 335 F.3d 1326, 1329 (11th Cir. 2003). "Custom" means a "widespread practice that ... is so permanent and well settled as to constitute a custom or usage with the force of law." *Holmes v. Kucynda,* 321 F.3d 1069, 1078 (11th Cir. 2003) (internal quotes omitted).

The only policy or custom alleged in the complaint is one of "failing to have

---

[5] The same principles governing municipal liability govern the liability of local school boards. *Cuesta v. School Board*, 285 F.3d 962, 966 (11th Cir. 2002) (Florida school board); *Davis*, 233 F.3d at 1375 (Georgia school board); *Worthington v. Elmore County Board of Education*, 160 Fed. Appx. 877, 880 (11th Cir.2005) (Alabama school board).

appropriate policies in place to prevent further abuse once abuse has been reported." (Doc. 1, ¶ 21). As noted in Part I, any such failure is irrelevant, since it is uncontroverted that the first report of abuse occurred on March 17 and that JJ was immediately shielded from any further abuse, and since a policy or custom is a basis for liability only if it is the "cause" or "moving force" behind the constitutional violation. *Grech*, 335 F.3d at 1329. To the extent Count One may attempt to allege policies or customs relating to the absence of a promulgated, distributed anti-harassment policy and grievance procedure for lodging complaints of sexual harassment, (*id*., ¶ 31), as noted in Part I it is uncontroverted that such policies and procedures were promulgated and distributed (including directly to JJ) at the beginning of the school year.

In summary, the Board is entitled to summary judgment on the plaintiffs' Section 1983 claim.

## CONCLUSION

For the reasons set forth above, the Board's motion for summary judgment is **granted**. Judgment shall be entered accordingly by separate order.

DONE and ORDERED this 17th day of December, 2008.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE